UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LINDA P.,

                              Plaintiff,

                      v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

                           Defendant.

_____

DECISION AND ORDER

20-CV-1413L

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

       On June 19, 2017, plaintiff, then fifty-two years old, filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act"), and for supplemental security income under Title XVI of the Act, alleging an inability to work as of October 15, 2014, later amended to January 1, 2016. (Administrative Transcript, Dkt. #14 at 16). Her applications were initially denied. Plaintiff requested a hearing, which was held on October 21, 2019 before Administrative Law Judge ("ALJ") Stephen Cordovani. The ALJ issued a partially favorable decision on November 5, 2019 concluding that plaintiff was not disabled under the Social Security Act prior to May 4, 2018, but that plaintiff was disabled thereafter. (Dkt. #14 at 16-31). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 21, 2020. (Dkt. #14 at 6-8). Plaintiff now appeals.

The plaintiff has moved for judgment remanding the matter for the calculation and payment of benefits (Dkt. #15), and the Commissioner has cross moved (Dkt. #17) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted in part, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, which reflect treatment for adjustment disorder with mixed emotions, generalized anxiety disorder, major depressive disorder, affective disorder, post-traumatic stress disorder, schizophrenia, and degenerative disc disease in the cervical and lumbar spine, status post anterior lumbar interbody fusion of L4-L5 and L5-S1 in 2019, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #14 at 18). Applying the special technique for mental impairments, the ALJ concluded that plaintiff is moderately limited in understanding, remembering, and applying information, moderately limited in social interaction, moderately limited in concentrating, persisting, and maintaining pace, and mildly limited in adapting or managing herself. The ALJ therefore found plaintiff's mental health impairments to be non-disabling. (Dkt. #14 at 19-20).

Upon consideration of the record, the ALJ determined that *prior to May 4, 2018*, plaintiff had the residual functional capacity ("RFC") to perform light work, except that she could no more than occasionally stoop, twist at the waist, push, and pull. She could understand, remember and carry out simple instructions and perform tasks not requiring any supervisory duties, independent decision-making, goal-setting, strict production quotas, or greater than minimal changes to work routines and processes. Plaintiff could not travel to unfamiliar places. She could have no more than occasional interaction with supervisors, coworkers and the public, and could not perform team or tandem work. She would be off task 10% of the workday, and would be absent from work less than one day per month, and less than seven days per year. (Dkt. #14 at 20).

The ALJ further concluded that *beginning May 4, 2018*, plaintiff had the RFC to perform sedentary work, with all of the same additional limitations. (Dkt. #14 at 26).

Given this RFC, vocational expert Roxanne Benoit testified that plaintiff could not return to her past relevant work as a therapeutic aide in a group home (a medium exertion position plaintiff had occupied from 1997-2012, performed by plaintiff as heavy). The vocational expert testified that for the period prior to May 4, 2018, an individual with the light exertion RFC described by the ALJ could perform the representative positions of cleaner/polisher, laundry worker, and mail clerk. The vocational expert further testified that for the period beginning May 4, 2018, assuming the same limitations, but limited to sedentary work, there would be no jobs that such an individual could perform. (Dkt. #14 at 28-29). The ALJ accordingly concluded that plaintiff was "not disabled" from January 1, 2016 through May 3, 2018, but was disabled as of May 4, 2018.

I find that the ALJ's determination that plaintiff was capable of no more than sedentary work – and thus, was disabled – for the period of May 4, 2018 and thereafter, was well-supported,

and the Court will not disturb it. However, I find that the ALJ's determination that plaintiff's RFC was less limiting from January 1, 2016 through May 3, 2018, and that she therefore did not become disabled until after that date, was insufficiently supported, and that additional development of the record was necessary in order to support a determination of plaintiff's RFC prior to May 4, 2018.

## I.    The "Onset" Date

Plaintiff argues that the ALJ's selection of May 4, 2018 as the date her RFC changed from "light" to "sedentary" was arbitrary and unsupported. The Court concurs.

"Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20, 1983 SSR LEXIS 25 to determine the onset date of disability." *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "Where the ALJ determines that the date of onset is other than what the claimant alleges, the ALJ has an affirmative obligation to 'adduce substantial evidence to support his [finding].'" *Ahisar v. Commissioner*, 2015 U.S. Dist. LEXIS 131674 at *24 (E.D.N.Y. 2015) (quoting *Corbett v. Commissioner*, 2009 U.S. Dist. LEXIS 121261 at *37 (*N.D.N.Y. 2009)). Any onset date inference "must be . . . based on the facts and can never be inconsistent with the medical evidence of record." S.S.R. 83-20, 1983 SSR LEXIS 25 at *6. An arbitrary onset date selection will not be accepted by a reviewing court:

> [C]ourts have held tha[t] an ALJ may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable. Similar results obtain where an ALJ adopts some other equally arbitrary onset date, such as the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing.

*McCall v. Astrue*, 2008 U.S. Dist. LEXIS 104067 at *63 (S.D.N.Y. 2008).

SSR 83-20, 1983 SSR LEXIS 25, acknowledges that, "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date

an impairment became disabling," and, therefore, it may be necessary to "infer" the onset date from the available evidence. *Id*. In such cases, the ALJ's determination as to a particular onset date "must have a legitimate medical basis," and a "[c]onvincing rationale must be given for the date selected." *Id*. "[C]ourts have found it 'essential' for the Commissioner to consult a medical advisor where . . . a claimant does not have contemporaneous medical evidence from the period around his alleged disability onset date [and] the record is ambiguous with respect to onset date." *Cataneo v. Astrue*, 2013 U.S. Dist. LEXIS 36653 at *48 (E.D.N.Y. 2013) (collecting cases). *See also Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008) ("[i]n circumstances where an ALJ has reason to question the onset date of disability, the best practice may be to solicit the views of a medical expert"). The ALJ may also call and rely upon the testimony of lay witnesses, such as a claimant's "family members, friends, and former employers," in determining an onset date. SSR 83-20, 1983 SSR LEXIS 25, *6.

Here, the ALJ explained his reliance on May 4, 2018 as the operative date by noting that it wasn't until that time that "the claimant's allegations regarding her symptoms and limitations" began to be "consistent with the [medical] evidence." (Dkt. #14 at 26). Specifically, plaintiff treated with physician's assistant Luke Martinic on May 4, 2018, complaining primarily of low back pain. Objective testing by P.A. Martinic showed significantly diminished lumbar spinal range of motion, diminished tendon reflexes in both legs, positive straight leg raising tests, and diminished strength and flexibility in the legs and feet. (Dkt. #12 at 27, 549-51). A follow-up MRI performed on May 29, 2018 showed disc herniation at T12-L1, degenerative changes and an annular tear at L2-3, and broad-based central disc herniation at L3-4. (Dkt. #14 at 552-54). P.A. Martinic observed that plaintiff's low back pain, numbness, instability in the legs and feet, and

urinary incontinence, were "long-standing" problems that "have been ongoing for years without tendency to improve," despite "extensive nonoperative management." (Dkt. #14 at 584).

The ALJ's finding that the May 4, 2018 examination was the "first" time plaintiff's complaints were supported by medical evidence was factually erroneous. An earlier treatment note with P.A. Martinic, from October 20, 2017, showed objective findings virtually identical to those in the May 4, 2018 record (e.g., significantly limited spinal range of motion, diminished reflexes, strength deficits in the arms and legs, and positive straight leg raising tests) and likewise reflected plaintiff's complaints of "a progressive worsening of her pain" since a slip and fall in June of 2016, which "has become quite severe and intractable on a daily basis and significantly impacts her quality of life." (Dkt. #14 at 541). It was at this October 20, 2017 visit that Martinic first recommended spinal surgery, explicitly based upon his review of earlier medical evidence, consisting of cervical and lumbar MRIs from July 26, 2016, which showed "severe spondylotic changes throughout the generalized cervical spine."[1] (Dkt. #14 at 542-43, 549, 555).

Given that imaging studies and treatment records predating the May 4, 2018 "onset" date determined by the ALJ appear to have reflected symptoms, objective findings, and clinical indicators of spinal degeneration that were comparable to those noted by P.A. Martinic on May 4, 2018, the ALJ's finding that plaintiff's RFC diminished to a limited to a range of sedentary work

---

[1] The 2016 MRIs showed spurring and bulging at C3-4, minor degenerative changes and narrowing of the thecal sac at C4-5, marked degenerative loss of disc space with flattening and indenting of the anterior cord at C5-6 and C6-7, an annual tear and disc herniation narrowing the spinal canal and abutting the spinal cord at C7-T1, disc bulging at L2-3, bulging and spinal stenosis at L3-4, bulging and disc narrowing at L4-5, degenerative disc space narrowing with narrowing of the canal at L5-S1, and slight anterolisthesis (slippage of the upper vertebral body onto the vertebra below) of L5 on S1. (Dkt. #14 at 542-43). Subsequent imaging studies in 2017 continued to indicate "advanced spondylotic changes throughout the generalized cervical spine," with severe disc space narrowing at C3-C7 and moderate narrowing at C7-T1, along with straightening of the lumbar lordosis, moderate to severe disc height narrowing at L3-4, L4-5, and L5-S1, and grade 1 (mild) anterolisthesis of L5 on S1. (Dkt. #14 at 540-44).

on or around that date – but not earlier – is not supported by a "convincing rationale." SSR 83-20, 1983 SSR LEXIS 25 at *8.

Indeed, the record before the ALJ was so sparse, "conflicting [and] ambiguous" as to frustrate any effort to make a well-supported determination of plaintiff's RFC prior to October 20, 2017, when plaintiff appears to have begun treating with P.A. Martinic. *Jones v. Colvin*, 2017 U.S. Dist. LEXIS 54612 at *55-*56 (S.D.N.Y. 2017)("if the evidence was conflicting or ambiguous, the ALJ was obligated to develop the [r]ecord further, by consulting a medical advisor or, if necessary, eliciting testimony from [p]laintiff's friends, or former employers").

Although the record contains imaging studies evincing degenerative spinal changes in 2011, 2013, and 2014, and hospital records from plaintiff's June 26, 2016 fall which showed an exacerbation of spinal symptoms, the only medical records documenting plaintiff's ongoing treatment for spinal impairments between January 1, 2016 and May 4, 2018 were authored by her primary care physician, internist Dr. Lester Sielski. Unfortunately, those records are largely illegible, thus creating an evidentiary gap.[2]

The sole physical RFC opinion rendered during the relevant period from January 2016 through May 2018 was a September 27, 2017 report by consulting internist Dr. Nikita Dave (Dkt. #14 at 510-13). However, Dr. Dave's report was based on an incomplete medical history, with no

---

[2] Dr. Sielski's handwritten notes span the time period from approximately October 8, 2015 through August 4, 2017. (Dkt. #14 at 406-13). While most of the scribbled notes are illegible, a few scattered phrases can be deciphered, which are plainly relevant to plaintiff's disability claim. These include "spine problem," "herniated disc," and "severe pain" (October 8, 2015, Dkt. #14 at 413), "neck and lumbar pain" (November 13, 2015, Dkt. #14 at 412), "numbness in hands and also weakness in both hands" (February 5, 2016, Dkt. #14 at 411), "having difficulty . . . with numbness in her hands and also weakness in her arms . . . lumbar area causes pain in her back and down legs" (April 18, 2016, Dkt. #14 at 410), and "low back limited flexion . . . cervical disc herniation, lumbar disc herniation" (November 21, 2016, Dkt. #14 at 409). Due to the potential significance of these records, the ALJ is directed to recontact Dr. Sielski on remand.

review of plaintiff's spinal MRI records after 2014, and reflected objective findings that sharply conflicted, in every relevant particular, with the examination findings of P.A. Martinic less than four weeks later. (Dkt. #14 at 542). Plaintiff's October 21, 2019 hearing testimony likewise shed no light on her limitations between 2016 and 2018: plaintiff was only asked about her present symptoms, and gave no testimony about any prior period.

In sum, given the ambiguities, conflicts, evidentiary gaps, and illegible treatment notes that weakened an already scant record for the period from 2016 through 2018, further development was needed.

Having determined that remand is necessary, to include completion of the record and the issuance of an entirely new decision for the period from January 1, 2016 through May 3, 2018, the Court declines to reach plaintiff's alternative argument, that the ALJ's determination of plaintiff's RFC failed to sufficiently account for her mental limitations.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision, with respect to the period prior to May 4, 2018, was not supported by substantial evidence. The plaintiff's motion for judgment on the pleadings (Dkt. #15) is granted in part, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #17) is denied.

The Commissioner's decision is reversed in part, to the extent that the Commissioner determined that plaintiff was capable of a limited range of light work and was therefore not disabled prior to May 4, 2018, and the matter is remanded for further proceedings. On remand, the ALJ is directed to render a new decision concerning plaintiff's disability claim from January 1, 2016 through May 3, 2018 (the "relevant period").

Further proceedings in connection with the new decision should include, but are not limited to: (2) recontacting plaintiff's treating physician, Dr. Lester Sielski, to obtain clarification of his treatment records, and/or an RFC opinion, for the relevant period; (2) developing the record further with respect to the relevant period, by seeking additional medical records, consulting a medical advisor, and, if necessary, seeking information from plaintiff's friends, family, or former employer(s) as to the date upon which plaintiff's symptoms became disabling; and (3) giving due consideration to all of the evidence in the record, including but not limited to the October 20, 2017 treatment note by P.A. Luke Martinic and the prior imaging studies referred to therein.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 20, 2021.

9